Case 1:22-cr-00320-JMC   Document 1-1   Filed

Case: 1:22-mj-00177
Assigned To : Magistrate Judge Faruqui, Zia M.
Assign. Date : 8/8/2022
Description: Complaint w/ Arrest Warrant

# STATEMENT OF FACTS

I, Ashley Roberts, am a Federal Bureau of Investigation (FBI) Special Agent assigned to assigned to the Washington Field Office Joint Terrorism Task Force (JTTF). In my duties as a Special Agent, I investigate crimes committed by racially-motivated violent extremists and other domestic terrorism related matters. I have personally participated in procuring and executing arrest warrants of persons committing federal violations and search warrants involving the search and seizure of multiple types of evidence, to include electronic communications, digital devices, social media accounts, cell site data, and geolocation data. Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As an FBI Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of a violation of Federal criminal laws.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice

President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

As outlined below, there is probable cause to believe ANTONIO LAMOTTA committed violations of 18 U.S.C. § 1752(a)(1) and (2) and 40 U.S.C. § 5104(e)(2)(D) and (e)(2)(G). In the following paragraphs, evidence to include surveillance footage from Metropolitan Police Department (MPD) body camera, U.S. Capitol surveillance footage, and social media postings provide probable cause that LAMOTTA entered the U.S. Capitol Building on January 6, 2021.

According to U.S. Capitol surveillance footage, LAMOTTA was inside the U.S. Capitol on January 6, 2021, in the wing east of the Rotunda from approximately 15:21-15:29 EST. Based on a review of U.S. Capitol Police surveillance footage, Lamotta entered the Capitol building through the east Rotunda doors at approximately 3:21 p.m. He was part of a group of rioters that pushed past police officers working to bar entry into the building. Police pushed Lamotta out of the building, along with other rioters, at approximately 3:29 p.m. The following screenshots of U.S. Capitol surveillance footage are below (The timestamps on the screenshots below are in Universal Coordinated Time):







Members of the Metropolitan Police Department ("MPD") took part in this effort to eject rioters from the Capitol building. Body-worn camera footage from MPD officers reveals

corroborates Lamotta's presence in the building during the times above, and clearly shows his face. The following screenshots of MPD body camera footage are below:







On November 5, 2020, two days after the 2020 Presidential Election, Antonio LAMOTTA was arrested by the Philadelphia Police Department for carrying a firearm without a license. FBI Special Agent Matthew King interviewed LAMOTTA that day, after his arrest. Agent King viewed the images depicted above, and the videos from which they were taken, and identified LAMOTTA in those images and videos.

Based on the foregoing, your affiant submits that there is probable cause to believe that ANTONIO LAMOTTA violated 18 U.S.C. § 1752(a)(1) and (2), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that ANTONIO LAMOTTA violated 40 U.S.C. § 5104(e)(2)(D) and (e)(2)(G), which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of

Congress or either House of Congress; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

_____
ASHLEY ROBERTS
SPECIAL AGENT
FEDERAL BUREAU OF
INVESTIGATION

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 8th day of August, 2022.

_____
HONORABLE JUDGE ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE