**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 22-cr-320 (JMC)** |
| **v.** | : | |
| | : | |
| **ANTONIO LAMOTTA,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S
### MOTION TO DISMISS THE INFORMATION

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant Antonio Lamotta's Motion to Dismiss the Information in this case, ("Def. Mot."), ECF 23. For a list of reasons, Lamotta contends that each of the four misdemeanor charges in the Information should be dismissed. Lamotta's claims are meritless for the reasons set forth below.

### BACKGROUND

Antonio Lamotta participated in the insurrection at the United States Capitol on January 6, 2021. He entered the U.S. Capitol building through the East Rotunda doors and remained inside for nearly ten minutes, despite the efforts of law enforcement officers to clear the area of rioters. Based on his actions on January 6, 2021, the defendant was charged by information with violating 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(2), Disorderly and Disruptive Conduct in a Restricted Building or Grounds, 40 U.S.C. § 5104(e)(2)(D), Disorderly Conduct in a Capitol Building or Grounds, and 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building. ECF 11. Lamotta now challenges the information on several grounds, none of which merit dismissal in this case.

1

**ARGUMENT**

**I.      The Legal Standard For Reviewing The Sufficiency Of A Charging Document Under Federal Rule of Criminal Procedure 7(c).**

"[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)); *see also United States v. Williams*, 679 F.2d 504, 508 (5th Cir. 1982) (Rule 7(c) "does not [require] that the indictment must set forth facts and evidentiary details necessary to establish each of the elements of the charged offense."); *United States v. Apodaca*, 275 F. Supp. 3d 123, 153-54 (D.D.C. 2017) (Howell, C.J.) (rejecting a Rule 7(c) motion to dismiss § 924 (c) charges on the ground that "they do not identify specific weapons, specify where and when the weapons were possessed, or state whether weapons were 'used, carried or brandished.'"); *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (rejecting a Rule 7(c) challenge to a Hobbs Act robbery charge on the ground that the "indictment does not specify what it was that defendants allegedly conspired to steal or precisely how the conspiracy would have affected interstate commerce. Rather, it alleges in conclusory terms that defendants conspired to commit robbery and thereby affected interstate commerce."). Because Rule 7(c) applies equally to informations and indictments, those decisions apply with full force here. *See United States v. Universal C. I. T. Credit Corp.*, 102 F. Supp. 179, 182 (W.D. Mo.) ("suffice it to say that an information need not reveal the evidence a defendant must meet"), aff'd, 344 U.S. 218 (1952).

"It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)) (indictment charging a violation of 18 U.S.C. § 1461 did not define

"obscene"). "[T]o be sufficient, an indictment need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." *Verrusio*, 762 F.3d at 13 (indictment charging accepting of illegal gratuities was not deficient because it did not "allege precisely how Verrusio contemplated influencing [amendments to a federal highway bill]"); *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) ("It was enough for the indictment [charging an attempt to violate the unlawful reentry statute, 8 U.S.C. § 1326(a)] to point to the relevant criminal statute and allege that respondent "intentionally attempted to enter the United States ... at or near San Luis ... Arizona" "[o]n or about June 1, 2003.").

Here, each count of the Information charges a violation of a specified statute, employing the complete statutory language, which includes each of the elements of the charged offense. Each count alleges that Lamotta committed the charged offense on January 6, 2021, inside the District of Columbia. *See Apodaca*, 275 F. Supp. 3d. at 154 (charges were sufficiently pled because "[i]n addition to 'where' the offenses were allegedly perpetrated, the indictment also states 'when' they were allegedly committed").

Lamotta does not contend that any court has ever held that a pleading charging any of the subject crimes is deficient for failing to allege any of the items on his laundry lists. *See Alfonso*, 143 F.3d at 776 ("We have never held that an indictment alleging a violation of the Hobbs Act must specify the precise nature of the effect upon interstate commerce that the government intends to prove at trial, and we decline to do so now.").

Nor does he claim that the absence of any information will prevent him from preparing his defense or will prevent him from pleading double jeopardy if the government charges him in the future for his conduct on January 6. *See Apodaca*, 275 F. Supp. 3d. at 154 (rejecting a Rule 7(c)

challenge; "although not included in the indictments, the government has since filed supplemental briefing which includes details of the defendants' past use, carrying, or brandishing of firearms in relation to their drug trafficking activities"; "the language of Count Two, further bolstered by the government's supplemental briefing, sets forth sufficient information so that the defendants are aware of the offense with which they are charged and so that they can prepare an adequate defense or avoid double jeopardy").

## II.     Lamotta's Legal Challenges to the Information Fail.

### A.   Lamotta's Claim That Only the Secret Service Can Designate Restricted Areas Under § 1752 Is Meritless.

Lamotta contends Count One of the Information fails to state an offense because, under 18 U.S.C. § 1752, only the United States Secret Service, not the Capitol Police, could determine the restricted perimeter in anticipation of the certification vote. Def. Mot. at 4-6. He's wrong.

The text of Section 1752 "is not complex," *United States v. Griffin*, 549 F.Supp.3d 49, 54 (D.D.C. 2021) (McFadden, J.). Like the defendant in *Griffin*, Lamotta "contends that the Secret Service must 'establish' the restricted area under § 1752(c)(1)," "[b]ut that requirement is not in the text." *Id*. at 54-55. "Indeed, the only reference in the statute to the Secret Service is to its protectees. Section 1752 says nothing about who must do the restricting." *Id.* at 55. The text "plainly does not require that the Secret Service be the entity to restrict or cordon off a particular area," *United States v. Mostofsky*, 21-cr-138 (JEB), 2021 WL 6049891, at *13 (Boasberg, J.) (D.D.C. December 28, 2021). "Congress's failure to specify how an area becomes 'restricted' just means that the statute does not require any particular method for restricting a building or grounds." *See United States v. McHugh*, No. 21-cr-453, 2022 WL 296304, at *18 (D.D.C. Feb. 1, 2022) (Bates, J.)

All the other judges of this court to have addressed this issue have come to the same conclusion as Judge McFadden in *Griffin*. *See, e.g., United States v. Vo,* 21-CR-509 (TSC) (Doc. No. 53, denying Defendant's Motion to Dismiss). Lamotta ignores that *Griffin* rested on a thorough examination of the statutory text, legislative history, and judicial decisions to debunk the claim that the Secret Service has exclusive authority to restrict locations under § 1752. 549 F. Supp. 3d at 53-57.

**B. Lamotta's Claim That He Cannot Be Guilty of Violating 18 U.S.C. § 1752 Because Former Vice-President Pence Was Not "Temporarily Visiting" the Capitol on January 6 Is Meritless.**

Lamotta also says he cannot be guilty of violating § 1752 on January 6 because former Vice President Mike Pence was not "temporarily visiting" the Capitol on that day. Def. Mot. at 8-11. Specifically, he contends that these charges fail to state an offense because, in his view, the Vice President was not "temporarily visit[ing]" the U.S. Capitol when he was carrying out his constitutionally and statutory mandated obligations in the Capitol building on January 6, 2021. He's wrong.

Lamotta's argument defies the plain text, structure, and purpose of the statute. Chief Judge Howell correctly rejected an analogous claim in *United States v. Williams*, 1:21-cr-377, ECF No. 88 (D.D.C. June 8, 2022). At least four other judges of this District have rejected permutations of the same arguments in other January 6 cases. *See United States v. McHugh*, 21-cr-453, 2022 WL 296304, at *20-21 (D.D.C. Feb. 1, 2022) (Bates, J.); *United States v. Andries*, 21-cr-93, 2022 WL 768684, at *16-17 (D.D.C. Mar. 14, 2022) (Contreras, J.); *United States v. Puma*, 21-cr-454, 2022 WL 823079, at *16-18 (D.D.C. Mar. 19, 2022) (Friedman, J.); *United States v. Bingert*, 21-cr-91, 2022 WL 1659163, at *15 (D.D.C. May 25, 2022) (Lamberth, J.). No district judge has sided with Lamotta's view.

This Court should reach the same conclusion here. To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (internal quotation omitted) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). Subsection 1752(c)(1)(B) defines "restricted buildings or grounds," in relevant part, as "any posted, cordoned off, or otherwise restricted area … of a building or grounds where the President or other person protected by the Secret Service is or will be *temporarily visiting*." (Emphasis added). In turn, the verb "visit" means, *inter alia*, "to go to see or stay at (a place) for a particular purpose (such as business or sightseeing)" or "to go or come officially to inspect or oversee."[1]   And the adverb "temporarily" adds that the protectee's visit must occur "during a limited time."[2]

As a textual matter, then, definition of "visit" plainly describes the Secret Service protectee's activities on January 6. Vice President Pence was physically present at the U.S. Capitol for a particular purpose: he presided over Congress's certification of the 2020 Presidential Election, first in the joint session, and then in the Senate chamber. While not specifically alleged in the information, two other Secret Service protectees (members of the Vice President's immediate family), also came to the Capitol building that day for a particular purpose: to observe these proceedings while they were ongoing and Vice President Pence was present. Furthermore, as President of the Senate, Vice President Pence oversaw the vote certification. And all three protectees visited the Capitol temporarily—*i.e.*, during a limited time. Given the nature of the presence of the Vice President (and his family members), the Capitol building plainly qualified as a building where "[a] person protected by the Secret Service [was] … temporarily visiting," 18

---

[1]     https://www.merriam-webster.com/dictionary/visit (last visited July 19, 2022).

[2]     https://www.merriam-webster.com/dictionary/temporarily (last visited July 19, 2022).

U.S.C. § 1752(c)(1)(B). *See Williams*, No. 1:21-cr-377, ECF No. 88, at 5-6 (adopting the "plain reading of the words" in subsection 1752(c)(1)(B) urged by the government); *McHugh*, 2022 WL 296304, at \*21 (reaching "a commonsense conclusion: the Vice President was 'temporarily visiting' the Capitol"); *Andries*, 2022 WL 768684, at \*16 ("Vice President Pence was 'temporarily visiting' the Capitol on January 6, 2021 if he went to the Capitol for a particular purpose, including a business purpose, and for a limited time only. Plainly he did. He went to the Capitol for the business purpose of carrying out his constitutionally assigned role in the electoral count proceeding; he intended to and did stay there only for a limited time."); *Puma*, 2022 WL 823079, at \*17 (under the plain language of Section 1752, the Vice President "was temporarily visiting the Capitol on January 6, 2021: he was there for a limited time only in order to preside over and participate in the Electoral College vote certification."). Lamotta has given this Court no reason to depart from the rulings of its colleagues.

### C. Lamotta's Complaints About the Lack Of Greater Factual Specificity in Counts Three and Four Fails.

Lamotta raises meritless challenges to both Count Three and Count Four, charging violations of 40 U.S.C. § 5104(e)(2)(D) and (G), which state:

> On or about January 6, 2021, in the District of Columbia, ANTONIO LAMOTTA willfully and knowingly engaged in disorderly and disruptive conduct within the United States Capitol Grounds and in any of the Capitol Buildings with the intent to impede, disrupt, and disturb the orderly conduct of a session of Congress and either House of Congress, and the orderly conduct in that building of a hearing before or any deliberation of, a committee of Congress or either House of Congress. (**Violent Entry and Disorderly Conduct in a Capitol Building**, in violation of Title 40, United States Code, Section 5104(e)(2)(D))

\* \* \* \*

On or about January 6, 2021, in the District of Columbia, ANTONIO LAMOTTA willfully and knowingly paraded, demonstrated, and picketed in any United States Capitol Building. (**Parading, Demonstrating, or Picketing in a Capitol Building**, in violation of Title 40, United States Code, Section 5104(e)(2)(G))

Lamotta contends that the Information fails to state an offense as to Count Three because "the government does not allege that Mr. Lamotta specifically engaged in disorderly or disruptive conduct." Def. Mot. at 12. Lamotta calls this a "bare bones assertion" and claims that the Information fails to state an offense. *Id.*

Such specificity is not required. *See Verrusio*, 762 F.3d at 13 ("[T]o be sufficient, an indictment need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense."). The Information in this case does just that: it sufficiently alleges Lamotta's disruptive conduct, that he "willfully and knowingly engaged in disorderly and disruptive conduct." *See generally United States v. White*, 610 F.3d 956, 958–59 (7th Cir. 2010) (an indictment "that 'tracks' the words of a statute to state the elements of the crime is generally acceptable, and while there must be enough factual particulars so the defendant is aware of the specific conduct at issue, the presence or absence of any particular fact is not dispositive"); s*ee also United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015) ("When considering a motion to dismiss an indictment, a court assumes the truth of those factual allegations."). And the information specifies the time and place of Lamotta's conduct. *See United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) ("We have consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.")

(quotation marks omitted). That is more than enough to meet Rule 7(c)'s requirement for a "plain, concise, and definite written statement of the essential facts."

The same is true for Count Four. Lamotta complains that the Information contains "no allegations that Mr. Lamotta did anything to parade, picket, or demonstrate." Def. Mot. at 12. He contends that, because the Information does not charge Lamotta with displaying signs, chanting with protesters, or making gestures that he was protesting, that the government fails to state a claim.

But neither § 5104(e)(2)(G) nor any judicial decision construing it requires the government to prove those particular indicia, so the Information cannot be deficient for failing to allege that Lamotta did any of those things. *See* Point I, *supra7; see also United States v. Stewart*, 744 F.3d 17, 21 (1st Cir. 2014) ("At the indictment stage, the government need not 'show,' but merely must allege, the required elements"; "courts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations."). Instead, Count Four does allege that Lamotta engaged in 'parading,' 'demonstrating,' and 'picketing," which is the language of the statute. At this point of the proceedings, such an allegation is sufficient to meet the requirements of Rule 7(c).

## D. Section 5104(e)(2)(G) is neither overbroad nor vague.

Lamotta next argues that Section 5104(e)(2)(G) is both overbroad and unconstitutionally vague. Neither argument has merit.

In the First Amendment context, as in others, "[f]acial challenges are disfavored." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008). Facial overbreadth challenges—in which a defendant asserts that a statute, constitutionally applied to him, is nevertheless invalid because it would be unconstitutional in a "substantial number" of *other*

cases, *id.* at 449 n.6 (internal quotation marks omitted)—are even more exceptional. "'Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment,'" overbreadth is "'"strong medicine"'" to be employed "'"only as a last resort."'" *Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) (quoting *New York v. Ferber*, 458 U.S. 747, 769 (1982)); *cf. Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to . . . constitutionally unprotected conduct") (emphasis omitted).

The Supreme Court has therefore "vigorously enforced the requirement that a statute's overbreadth be *substantial* . . . relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292. "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Id.* at 801. And laws that are "not specifically addressed to speech" are far less likely to present such a danger. *Hicks*, 539 U.S. at 124; see *id.* (observing that "an overbreadth challenge" to such a law will "[r]arely, if ever, . . . succeed").

Lamotta's challenge fails that demanding standard. Because "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers," the "first step in overbreadth analysis is to construe the challenged statute." *Williams*, 553 U.S. at 293. The prohibition in Section 5104(e)(2)(G) presents "no ambiguity"; it "tells the citizen that it is unlawful for him" to parade, demonstrate, or picket inside the Capitol Building. *Jeanette Rankin Brigade*, 342 F.Supp. at 583. The operative verbs—parade, demonstrate, and picket—principally target

conduct rather than speech, and those verbs are paired with the "willfully and knowingly" scienter requirements, *see Williams*, 553 U.S. at 294 (focusing on scienter requirement in determining that statute was not overbroad). At the very least, Lamotta cannot show that Section 5104(e)(2)(G) is "substantial[ly]" overbroad relative to its "plainly legitimate sweep." *Washington State Grange*, 552 U.S. at 449 n.6 (internal quotation marks omitted). Lamotta's own prosecution—which involved physically trespassing into the restricted Capitol on the heels of others who had forcibly breached the building—is illustrative of the numerous constitutionally legitimate applications of the statute to conduct and unprotected speech. And far from showing a "realistic danger" of constitutionally problematic applications in other cases, *Taxpayers for Vincent*, 466 U.S. at 801, Lamotta fails to identify a single actual example of a prosecution based on protected speech. Moreover, "[e]ven protected speech is not equally permissible in all places and at all times." *Cornelius*, 473 U.S. at 799 (1985).  The Capitol Building is a nonpublic forum, and the government may restrict speech inside the building as long as the restrictions are 'viewpoint neutral' and 'reasonable in light of the purpose served by the forum,'" as these are. *Bynum* 93 F. Supp. 2d at 56 (citing *Cornelius*, 473 U.S. at 806 ). The limitations inherent in the crime of conviction thus render the possibility of any such prosecutions marginal at best, and any such case could be the subject of an as-applied challenge. Nothing at all calls for the "strong medicine," *Los Angeles Police Dep't*, 528 U.S. at 39 (internal quotation marks omitted), of overbreadth invalidation.

Lamotta's counterarguments lack merit. First, he relies (Mot. 14-15) on *Bynum*, *supra*, where Judge Friedman ruled that a Capitol Police regulation interpreting Section 5104(e)(2)(G) that defined "demonstration activity" to include "holding vigils" and "sit-ins" swept too broadly because it "invited the Capitol Police to restrict behavior that is no way disruptive." 93 F. Supp. 2d at 53, 57. As an initial matter, *Bynum*'s invalidation of a Capitol Police regulation—which was

applied to an individual who was denied permission to pray inside the Capitol building—does not inform the statutory challenge that Lamotta presses here. As noted above, Judge Friedman determined that Section 5104(e)(2)(G) was a reasonable, viewpoint neutral restriction in a nonpublic forum. Specifically, he reasoned that, although the *regulation* went too far, Section 5104(e)(2)(G) itself set forth "legitimate purposes," *id.* at 57, that were "aimed at controlling only such conduct that would disrupt the orderly business of Congress—not activities such as quiet praying, accompanied by bowed heads and folded hands," *id.* at 58. In short, Judge Friedman concluded that, unlike the regulation at issue in *Bynum*, the statute itself was not "substantial[ly] overbroad relative to its "plainly legitimate sweep." *Washington State Grange*, 552 U.S. at 449 n.6 (internal quotation marks omitted).

Lamotta's reliance (Mot. 16-17) on *Lederman v. United States*, 89 F. Supp. 2d. 29 (D.D.C. 2000), is also unavailing. Like *Bynum*, *Lederman* involved a challenge to a Capitol Police regulation, and is of marginal, if any, relevance for that reason. Furthermore, the regulation at issue there limited the areas within the Capitol *Grounds* in which individuals could engage in "demonstration activity," which in *Lederman* involved the distribution of leaflets in support of the arts. *Id.* at 32. Relying in part on *Jeanette Rankin Brigade*, *supra*, Judge Roberts in *Lederman* concluded that the entire Capitol Grounds constitute a traditional public forum, *id.* at 37, and that although the regulation left open alternative channels for expression, its imposition of a *total* ban burdened more speech than necessary. *Id.* at 38-39.

Finally, Lamotta adverts at various points to statements during the House debate on the statute. But legislative history "is an uneven tool that cannot be used to contravene plain text." *United States v. Bingert*, 21-cr-91, 2022 WL 1659163, at *11 (May 25, 2022) (citing *Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011)). The floor statements on which Lamotta relies are

12

"particularly 'unreliable.'" *United States v. Powell*, 21-cr-179, ECF No. 73, at 6 (D.D.C. July 8, 2022) (citing *Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 474 (1921)).

Lamotta next contends (Mot. 17-21) that Section 5104(e)(2)(G) is unconstitutionally vague.[3] That contention is flawed.

The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amends. V, XIV. An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "'[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply.'" *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982)). To avoid arbitrary enforcement, the law must not "vest[] virtually complete discretion" in the government "to determine whether the suspect has [violated] the statute." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983).

---

[3] Lamotta thus asserts a facial vagueness challenge. As a general matter, one making such a facial vagueness challenge must demonstrate that the law is "impermissibly vague in all its applications"; one whose conduct is "clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Vill. of Hoffman Ests.*, 455 U.S. 489, 494-95 (1982). Lamotta cannot surmount that demanding standard. Where it relies on a First Amendment theory, a facial challenge may be available where the challenger shows that the law in question "reaches a substantial amount of constitutionally protected conduct." *See Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 940 (9th Cir. 1997) (citing *Kolender v. Lawson*, 461 U.S. 352, 359 n.8 (1983)). Even assuming that is a viable theory under governing law, *see Quigley v. Giblin*, 569 F.3d 449, 457-58 (D.C. Cir. 2009) (questioning the breadth of "First Amendment vagueness doctrine"), Lamotta's facial vagueness claim fails for the same reasons that his overbreadth challenge falls short.

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *Williams*, 553 U.S. at 306, or because a reasonable jurist might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). "'Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.'" *Bronstein*, 849 F.3d at 1107 (quoting *Rose v. Locke*, 423 U.S. 48, 50 (1975) (per curiam)). Rather, a provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). The "touchstone" of vagueness analysis "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997).

A statutory provision is therefore "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). A statute is instead vague where it fails to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). "As a general matter," however, a law is not constitutionally vague where it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Johnson*, 576 U.S. at 603-04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

Lamotta fails to overcome the strong presumption that Section 5104(e)(2)(G) passes constitutional muster. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963) ("The strong presumptive validity that attaches to an Act of Congress has led this Court to hold

many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language."). Section 5104(e)(2)(G) does not tie criminal culpability to "wholly subjective" terms such as "annoying" or "indecent" that are bereft of "narrowing context" or "settled legal meanings," *Williams*, 553 U.S. at 306, nor does it require application of a legal standard to an "idealized ordinary case of the crime," *Johnson*, 576 U.S. at 604. Section 5104(e)(2)(G)'s prohibition on "willfully and knowingly . . . parad[ing], demonstrate[ing], or picket[ing] in any of the Capitol Buildings" gives rise to "no such indeterminacy." *Williams*, 553 U.S. at 306. The statute requires that a defendant, acting willfully and knowingly, parades, pickets, or demonstrates—in short, engages in disruptive conduct—inside the Capitol building. *See Bynum*, 93 F. Supp. 2d at 57-58 (explaining that Capitol Police regulation at issue in that case was unnecessary because Congress had provided "more than sufficient guidance" in Section 5104(e)(2)(G)'s statutory text). While "it may be difficult in some cases to determine whether these clear requirements have been met," "'courts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred.'" *Id.* (quoting *American Communications Ass'n, CIO v. Douds*, 339 U.S. 382, 411 (1950)).[4]

In an opinion following a recent trial, Judge Kollar-Kotelly explained some of the statute's operative terms, with no apparent difficulty:

> First, "to 'parade' means to take part in "[a] march or procession, organized on a grand scale, in support of some political object." "Parade," *Oxford English Dictionary* (2nd ed. 1989); *see also* "Parade," *Merriam-Webster.com Dictionary* (June 16, 2022) ("to march in or as if in a procession"). Similarly, to "demonstrate" means to take part in "[a] public manifestation, by a number of persons, of interest

---

[4] For the reasons given above, Lamotta's reliance on scattered comments during the floor debate in the House does not counsel a different outcome.

in some public question, or sympathy with some political or other cause; usually taking the form of a procession and mass-meeting." "Demonstration," *Oxford English Dictionary* (2nd ed. 1989); *see also* "Demonstration," *Merriam-Webster.com Dictionary* (June 16, 2022) (to take part in "a public display of group feelings toward a person or cause," e.g., "peaceful *demonstrations* against the government" (emphasis original)).

Findings of Fact and Conclusions of Law, *United States v. Rivera*, No. 21-cr-60 (CKK), ECF No. 62, at 15 (D.D.C. June 17, 2022). She further found that "mere presence in a protest, along with other words or conduct that ratify interest in demonstrating, is 'demonstrating' for the purposes of a criminal statute that bars the actus reus of "'demonstrating.'" *Id.* (citing *Brown v. Louisiana*, 383 U.S. 131, 142 (1966), and *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984). As *Rivera* shows, Section 5104(e)(2)(G)'s operative terms are readily construed and comprehensible.[5]  The statute is neither "so vague that it fails to give ordinary people fair notice of the conduct it punishes" nor "so standardless that it invites arbitrary enforcement." *Johnson*, 576 U.S. at 595.

---

[5] Based in part on *Rivera*, Lamotta educes (Mot. 18-21) a parade of horribles that he claims will follow should the Court not strike down Section 5104(e)(2)(G). But these facts patterns, not one of which this case presents, are appropriate brought in an as-applied challenge in the unlikely event that a prosecution is ever brought.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion to dismiss should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     /s/ Eric W. Boylan
ERIC W. BOYLAN
Assistant United States Attorney
Texas Bar No. 24105519
610 D Street N.W.
Washington D.C. 20001
(202) 815-8608
eric.boylan@usdoj.gov

/s/ Alexander Diamond
ALEXANDER M. DIAMOND
NY Bar No. 5684634
Assistant United States Attorney
District of Columbia
601 D St. NW, Room 6.3104
Washington, DC 20530
(202) 506-0427
Alexander.Diamond@usdoj.gov

17