UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 22-cr-320 (JMC) |
| v. | : | |
| | : | |
| ANTONIO LAMOTTA, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S COMBINED OPPOSITION
TO: (1) DEFENDANT'S MOTION IN LIMINE TO PRECLUDE VIDEO MONTAGE
EXHIBITS (ECF 27); AND (2) DEFENDANT'S MOTION IN LIMINE TO PRECLUDE
USE OF INFLAMMATORY LABELS (ECF 28)**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this combined response to: (1) the defendant's motion *in limine* to preclude use of video montage exhibits (ECF 27); and (2) the defendant's motion *in limine* to preclude use of inflammatory labels (ECF 28).

In essence, the defendant asks that the Court prevent the government from using evidence and language that accurately establishes and describes the defendant's crimes. The material the defendant seeks to exclude is relevant to the charged conduct and fairly describes the riot, rioters, and his conduct; therefore, the Court should deny his motion.

## Background

The defendant is charged via information with offenses related to crimes that occurred at the United States Capitol on January 6, 2021. Specifically, the defendant is charged with four misdemeanors, including Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1), Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2), Disorderly Conduct in a Capitol Building in violation of 40

U.S.C. § 5104(e)(2)(D), and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (ECF 11).

## Argument

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The general rule is that relevant evidence is admissible," *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993), a "liberal" standard, *United States v. Moore*, No. 18-cr-198, 2022 WL 715238, at *2 (D.D.C. Mar. 10, 2022). Additionally, Rule 403 does not require the government "to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone." *United States v. Gartmon,* 146 F.3d 1015, 1021 (D.C. Cir. 1998). Neither Rule 401 nor 403 supports the defendant's requested relief.

I. **General Evidence of the Events of January 6 and the Actions of Other Rioters at the Capitol is Relevant and Not Unduly Prejudicial.**

The defendant argues that the Court should exclude video evidence showing the actions of rioters other than the defendant. To be sure, to convict him, the jury must find that the defendant committed each offense with which he is specifically charged. It is not enough for the government to show that the defendant was simply present near others who committed crimes across the Capitol building and grounds.

However, the defendant's argument ignores the nature of these crimes as a collective action. It was the mob's collective action that disrupted Congress, and the defendant's knowledge of the collective riot bears on his *mens rea* for each of the charged offenses.

The government does not anticipate making areas of the Capitol the defendant did not go a focus of the trial. However, in order to show the overall riot, its effects, and why the certification of the Electoral College vote was suspended, the government will show the actions of other rioters

in other areas of the Capitol building and grounds. Like the defendant, none of the rioters were authorized to enter the Capitol. Like the defendant, none of them submitted to screening by the U.S. Capitol Police. Law enforcement officer witnesses will explain that, in expelling rioters, they could not distinguish between those rioters who were overtly violent and those who were not: everyone had to leave. This is because law enforcement could not predict who would act violently; any member of the crowd might be a threat to the officers or to members of Congress. Indeed, throughout the day, individual officers found their attention divided by the need to monitor the whole crowd, rather than focusing on a specific individual. But for the defendant's actions alongside so many others, the riot likely would have failed to delay the certification vote. *See United States v. Mazzocco*, No. 21-cr-54, Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). While the Court will judge the defendant based on his own actions, the context of his actions will necessarily be at issue. That context was a riot.

Moreover, the government's use of potential summary evidence to this effect would permissibly "help the [factfinder] organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of a multitude of witnesses throughout the trial." *See United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983). To be sure, any such aspects of the government's case would need to be "accurate and nonprejudicial[,]" *United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014), and require "a sufficient foundation[,]" *United States v. Mitchell*, 816 F.3d 865, 877 (D.C. Cir. 2016). The defendant does not, and cannot, substantiate his contention that the government cannot present this information appropriately.

Defendant here also faces a bench trial, rendering the risk of prejudice extraordinarily low. In another January 6 bench trial, Judge Kollar-Kotelly overruled a number of Rule 403-based

3

objections for this reason: "the various Courts of Appeals are in relative unanimity that prejudice objections 'have no logical application in bench trials[;] … excluding relevant evidence on the basis of unfair prejudice [in a bench trial] is a useless procedure." *United States v. Griffith*, 2023 U.S. Dist. LEXIS 26709 at *4 (D.D.C. Feb. 16, 2023) (quoting *Gulf States Utils. Co. v. Ecodyne Corp.,* 635 F.2d 517, 519 (5th Cir. 1981)). Any suggestion that the admission of relevant evidence contextualizing the riot in which the defendant participated will inflame the passions of the fact-finder is thus unfounded.[1]

Therefore, because evidence of the actions of other rioters is relevant and not unduly prejudicial, its admission is appropriate.

## II. The Descriptors Accurately Describe the Events of January 6, and the Federal Rules of Evidence Do Not Preclude Them.

The defendant argues that the Court should bar terms like "riot," "insurrection," and "attack," (Doc. 28), because the terms are "highly prejudicial." (Doc. 28 at 3.)

Evidence or language is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Sanford Ltd.*, 878 F. Supp. 2d 137, 143 (quoting Fed. R. Evid. 403, advisory committee's note). By their very nature, criminal charges involve an accusation that someone has wronged another person or has wronged society. Accordingly, such charges arouse emotion—there is nothing improper about that. Indeed, while cautioning against prosecutorial misconduct in *United States v.*

---

[1] Even were this case before a jury, the appropriate remedy would be a limiting instruction, not exclusion. The D.C. Circuit has consistently upheld the use of limiting instructions as a way of minimizing the residual risk of prejudice. *See, e.g.*, *United States v. Douglas,* 482 F.3d 591, 601 (D.C. Cir. 2007) (emphasizing the significance of the district court's instructions to jury on the permissible and impermissible uses of the evidence); *Pettiford*, 517 F.3d at 590 (same); *Crowder II*, 141 F.3d at 1210 (stating that mitigating instructions to jury enter into the Rule 403 balancing analysis). Of course, as this is a bench trial, a limiting instruction would neither be necessary nor helpful.

*Berger*, the Supreme Court simultaneously recognized that "[t]he United States Attorney . . . may prosecute with earnestness and vigor—indeed, he should do so." *Berger*, 295 U.S. 78, 88 (1935). "[T]he law permits the prosecution considerable latitude to strike 'hard blows' based on the evidence and all reasonable inferences therefrom." *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996) (*quoting United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1993)). When a prosecutor's comments fairly characterize the offense, fairly characterize the defendant's conduct, and represent fair inferences from the evidence, they are not improper. *Cf. Rude*, 88 F.3d at 1548 (the use of words like victim, deceit, outlandish, gibberish, charlatan, and scam was not improper); *Guam v. Torre*, 68 F.3d 1177, 1180 (9th Cir. 1995) ("[T]here is no rule [of evidence or ethics] requiring the prosecutor to use a euphemism for [a crime] or preface it by the word 'alleged.'").

Here, the government should not be required to dilute its language and step gingerly around the defendant's crimes. Contrary to the defendant's insinuations, what took place on January 6, 2021 was in fact a riot involving rioters, and an attack on the United States Capitol, the government of the United States, and American democracy. Indeed, after carefully considering the facts of other January 6 cases, many other members of this Court have recognized the riot as just such an attack. *See, e.g.*, *United States v. Mostofsky*, 1:21-cr-138 (JEB), Sent. Tr. at 40–41, May 6, 2022 (describing the riot as an "attack," describing the Capitol as "overrun," and describing Mostofsky and other rioters as engaged in "an attempt to undermine [our] system of government."); *United States v. Rubenacker*, 1:21-cr-193 (BAH), Sent. Tr. at 147–48, May 26, 2022 (describing the defendant as "part of this vanguard of people storming the Capitol Building" as part of the initial breach, and finding that his conduct "succeeded, at least for a period of time, in disrupting the proceedings of Congress to certify the 2020 presidential election"); *United States v. Languerand*, 1:21-cr-353 (JDB), Sent. Tr. at 33–34, January 26, 2022 ("[T]he effort undertaken by those who

stormed the Capitol . . . involved an unprecedented and, quite frankly, deplorable attack on our democratic institutions, on the sacred ground of the United States Capitol building, and on the law enforcement officers who were bravely defending the Capitol and those democratic values against the mob of which the defendant was a part."). None of this language is hyperbole; rather, these findings used vivid and violent language because they described a visceral and violent event. So, too, will prosecutors need to use appropriate language—and not euphemisms—to describe the nature and gravity of the defendant's conduct.[2]

    For the reasons stated above, the defendant's motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

---

[2] The defendant also argues that such terms violate the rule against hearsay (ECF 28 at 4). Hearsay is "a statement that: (1) the declarant does not make while testifying at a current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). The rule against hearsay is about evidence, not the statements or arguments of counsel. It has nothing to do with the issue that the defendant raises here, which is properly considered solely under Fed. R. Evid. 403. To the extent the Defendant argues that a witnesses' description of January 6 in the above discussed terms would necessarily be hearsay, and not their own personal opinion, such claims are conclusory and unsubstantiated.

By: */s/ Eric Boylan*
Eric Boylan
Texas Bar No. 24105519
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Tel: (202) 815-8608
Eric.boylan@usdoj.gov

*/s/ Alexander Diamond*
ALEXANDER M. DIAMOND
NY Bar No. 5684634
Assistant United States Attorney
District of Columbia
601 D St. NW
Washington, DC 20530
(202) 506-0427
Alexander.Diamond@usdoj.gov